# EXHIBIT "5"

| To: | Kingdom Studios, LLC (dwtrademarks@dickinsonwright.com) |
|---|---|
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 87781778 - KINGDOM STUDIOS, LLC - 75584-5 |
| **Sent:** | 1/9/2019 1:58:35 PM |
| **Sent As:** | ECOM114@USPTO.GOV |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |

**UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)**
**OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION**

**U.S. APPLICATION SERIAL NO.**
87781778

**MARK:** KINGDOM STUDIOS, LLC

*\*87781778\**

**CORRESPONDENT ADDRESS:**
NICOLE M. MEYER
DICKINSON WRIGHT PLLC
1825 EYE STREET, N.W., SUITE 900
WASHINGTON, DC 20006

**CLICK HERE TO RESPOND TO THIS LETTER:**
http://www.uspto.gov/trademarks/teas/response_forms.jsp

VIEW YOUR APPLICATION FILE

**APPLICANT:** Kingdom Studios, LLC

**CORRESPONDENT'S REFERENCE/DOCKET NO:**
75584-5
**CORRESPONDENT E-MAIL ADDRESS:**
dwtrademarks@dickinsonwright.com

# OFFICE ACTION

## STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW. A RESPONSE TRANSMITTED THROUGH THE TRADEMARK ELECTRONIC APPLICATION SYSTEM (TEAS) MUST BE RECEIVED BEFORE MIDNIGHT **EASTERN TIME** OF THE LAST DAY OF THE RESPONSE PERIOD.

**ISSUE/MAILING DATE: 1/9/2019**

**TEAS PLUS OR TEAS REDUCED FEE (TEAS RF) APPLICANTS – TO MAINTAIN LOWER FEE, ADDITIONAL REQUIREMENTS MUST BE MET, INCLUDING SUBMITTING DOCUMENTS ONLINE:** Applicants who filed their application online using the lower-fee TEAS Plus or TEAS RF application form must (1) file certain documents online using TEAS, including responses to Office actions (see TMEP §§819.02(b), 820.02(b) for a complete list of these documents); (2) maintain a valid e-mail correspondence address; and (3) agree to receive correspondence from the USPTO by e-mail throughout the prosecution of the application. *See* 37 C.F.R. §§2.22(b), 2.23(b); TMEP §§819, 820. TEAS Plus or TEAS RF applicants who do not meet these requirements must submit an additional processing fee of $125 per class of goods and/or services. 37 C.F.R. §§2.6(a)(1)(v), 2.22(c), 2.23(c); TMEP §§819.04, 820.04. However, in certain situations, TEAS Plus or TEAS RF applicants may respond to an Office action by authorizing an examiner's amendment by telephone or e-mail without incurring this additional fee.

**INTRODUCTION**

This Office action is supplemental to and supersedes the previous Office action issued on May 18, 2018 in connection with this application.

In a previous Office action(s) dated May 18, 2018, the trademark examining attorney refused registration of the applied-for mark based on the following: Trademark Act Section 2(d) for a likelihood of confusion with a registered mark as to International Classes 009 and 041. In addition, applicant was required to satisfy the following requirement(s): amend the identification of goods and/or services. In addition, prior filed Application Serial no. 87700317 was cited pending final disposition of the earlier filed application.

Based on applicant's response, the trademark examining attorney notes that the following requirement(s) have been satisfied: definite amended identification provided. *See* TMEP §713.02.

The referenced prior pending Application Serial No. 87700317 has matured into U.S. Registration No. 5512487. Accordingly, registration is refused as follows.

**The following is a SUMMARY OF ISSUES that applicant must address:**

- NEW ISSUE: Section 2(d) Refusal as to International Class 041

**PLEASE NOTE: The Refusal to Register the Mark Under Section 2(d) of the Trademark Act is CONTINUED as to U.S. Registration No. 3034139 for International Classes 009 and 041.**

Applicant must respond to all issues raised in this Office action and the previous May 18, 2018 Office action, within six (6) months of the date of issuance of this Office action. 37 C.F.R. §2.62(a); *see* TMEP §711.02. If applicant does not respond within this time limit, the application will be abandoned. 37 C.F.R. §2.65(a).

**SECTION 2(d) REFUSAL – LIKELIHOOD OF CONFUSION**

Registration of the applied-for mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 5512487. Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.* See the attached registration.

Trademark Act Section 2(d) bars registration of an applied-for mark that is so similar to a registered mark that it is likely consumers would be confused, mistaken, or deceived as to the commercial source of the goods and/or services of the parties. *See* 15 U.S.C. §1052(d). Likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the "*du Pont* factors"). *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017). Only those factors that are "relevant and of record" need be considered. *M2 Software, Inc. v. M2 Commc'ns, Inc.*, 450 F.3d 1378, 1382, 78 USPQ2d 1944, 1947 (Fed. Cir. 2006) (citing *Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1241, 73 USPQ2d

1350, 1353 (Fed. Cir. 2004)); *see In re Inn at St. John's, LLC* , 126 USPQ2d 1742, 1744 (TTAB 2018).

Although not all *du Pont* factors may be relevant, there are generally two key considerations in any likelihood of confusion analysis:  (1) the similarities between the compared marks and (2) the relatedness of the compared goods and/or services.  *See In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.* , 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976) ("The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks."); TMEP §1207.01.

The Marks

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression.  *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar."  *In re Inn at St. John's, LLC* , 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)); TMEP §1207.01(b).

The applicant has applied to register the mark **KINGDOM STUDIOS, LLC** for, in relevant part,
    "International Class 041: Video and audio production services; multi-media entertainment services in the nature of recording, production and post-production services in the field of films, movies, television series, and music; book publishing; entertainment services, namely, the provision of movies and video material via the Internet and cable television; film distribution"

The registered mark is **KINGDOM WORKS STUDIOS** for:
    "Book publishing; Film studios; Film and video film production; Publishing books in the field of education, religion and entertainment; Publishing e-books in the field of education, religion and entertainment; Media production services, namely, video and film production; Motion picture film production; Multimedia entertainment services in the nature of development, production and post-production services in the fields of video and films"

The marks share the terms KINGDOM and STUDIOS. Marks may be confusingly similar in appearance where similar terms or phrases or similar parts of terms or phrases appear in the compared marks and create a similar overall commercial impression.  *See Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce*, 228 USPQ 689, 690-91 (TTAB 1986), *aff'd sub nom. Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n* , 811 F.2d 1490, 1495, 1 USPQ2d 1813, 1817 (Fed. Cir. 1987) (finding COMMCASH and COMMUNICASH confusingly similar); *In re Corning Glass Works*, 229 USPQ 65, 66 (TTAB 1985) (finding CONFIRM and CONFIRMCELLS confusingly similar); *In re Pellerin Milnor Corp.*, 221 USPQ 558, 560 (TTAB 1983) (finding MILTRON and MILLTRONICS confusingly similar); TMEP §1207.01(b)(ii)-(iii).

Moreover, the term KINGDOM is the first term in the respective marks. Consumers are generally more inclined to focus on the first word, prefix, or syllable in any trademark or service mark.  *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1372, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005) (finding similarity between VEUVE ROYALE and two VEUVE CLICQUOT marks in part because "VEUVE . . . remains a 'prominent feature' as the first word in the mark and the first word to appear on the label");  *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 876, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992) (finding similarity between CENTURY 21 and CENTURY LIFE OF AMERICA in part because "consumers must first notice th[e] identical lead word");  *see also In re Detroit Athletic Co.*, 903 F.3d 1297, 1303, 128 USPQ2d 1047, 1049 (Fed. Cir. 2018) (finding "the identity of the marks' two initial words is particularly significant because consumers typically notice those words first").

Marks must be compared in their entireties and should not be dissected; however, a trademark examining attorney may weigh the individual components of a mark to determine its overall commercial impression.  *In re Detroit Athletic Co.*, 903 F.3d 1297, 1305, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) ("[Regarding the issue of confusion,] there is nothing improper in stating that . . . more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties." (quoting *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed. Cir. 1985)).

In the instant case, the marks create the same mental reaction, connotation and overall commercial impression. When comparing marks, "[t]he proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial

impression such that [consumers] who encounter the marks would be likely to assume a connection between the parties." *Cai v. Diamond Hong, Inc.*, __ F.3d __, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012)); TMEP §1207.01(b).  The proper focus is on the recollection of the average purchaser, who retains a general rather than specific impression of trademarks.  *In re Inn at St. John's, LLC* , 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re St. Helena Hosp.*, 774 F.3d 747, 750-51, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014); *Geigy Chem. Corp. v. Atlas Chem. Indus., Inc.*, 438 F.2d 1005, 1007, 169 USPQ 39, 40 (CCPA 1971)); TMEP §1207.01(b).


Lastly, where the goods and/or services of an applicant and registrant are "similar in kind and/or closely related," the degree of similarity between the marks required to support a finding of likelihood of confusion is not as great as in the case of diverse goods and/or services.  *In re J.M. Originals Inc.*, 6 USPQ2d 1393, 1394 (TTAB 1987); *see Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1242, 73 USPQ2d 1350, 1354 (Fed. Cir. 2004); TMEP §1207.01(b).


The Services

The goods and/or services are compared to determine whether they are similar, commercially related, or travel in the same trade channels.  *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369-71, 101 USPQ2d 1713, 1722-23 (Fed. Cir. 2012); *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1381 (Fed. Cir. 2002); TMEP §§1207.01, 1207.01(a)(vi).


In the instant case, the parties have identical book publishing services, and highly related, potentially identical, audio-video production services, video and film production and post-production services, and film production and distribution such that the services would marketed in the same channels of trade.


The compared goods and/or services need not be identical or even competitive to find a likelihood of confusion.  *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000); TMEP §1207.01(a)(i).  They need only be "related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that [the goods and/or services] emanate from the same source."  *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i).


The attached Internet evidence, consisting of web pages from the examining attorney's search in a computerized database, establishes that the same entity commonly provides the relevant services and markets the services under the same mark, that the relevant services are sold or provided through the same trade channels and used by the same classes of consumers in the same fields of use, and that the services are similar or complementary in terms of purpose or function.


The attached articles, and those incorporated by reference herein, from the examining attorney search in a computerized database demonstrate production, recording, and post production services, and film production and distribution services provided under the same mark and marketed in the same channels of trade.

- RENEGADE – production and post production services; audio-video production
- LISBONWORKS – video & audio production and post production services
- MAAC – studios that engage in film production and distribution
- PREM1ERE FILM – film production and distribution company

Thus, applicant's and registrant's services are considered related for likelihood of confusion purposes.  *See, e.g., In re Davey Prods. Pty Ltd.*, 92 USPQ2d 1198, 1202-04 (TTAB 2009); *In re Toshiba Med. Sys. Corp.*, 91 USPQ2d 1266, 1268-69, 1271-72 (TTAB 2009).


The marks are highly similar. The book publishing, audio and video production services and recording, production and post production services and film distribution are very highly related. The similarities among the marks and the services are so great as to be marketed in the same channels of trade and create a likelihood of confusion among consumers.

The overriding concern is not only to prevent buyer confusion as to the source of the goods and/or services, but to protect the registrant from adverse commercial impact due to use of a similar mark by a newcomer.  *See In re Shell Oil Co.*, 992 F.2d 1204, 1208, 26 USPQ2d 1687, 1690

(Fed. Cir. 1993).  Therefore, any doubt regarding a likelihood of confusion determination is resolved in favor of the registrant.  TMEP §1207.01(d)(i); *see Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1265, 62 USPQ2d 1001, 1003 (Fed. Cir. 2002); *In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 464-65, 6 USPQ2d 1025, 1026 (Fed. Cir. 1988).


Accordingly, registration is refused under Section 2(d) of the Trademark Act as to International Class 041.

Although applicant's mark has been refused registration, applicant may respond to the refusal by submitting evidence and arguments in support of registration.


**PLEASE NOTE: The applicant's response dated November 15, 2018 will be addressed upon the applicant's response to this superseding Office action.**


**ASSISTANCE**
Please call or email the assigned trademark examining attorney with questions about this Office action.  Although the trademark examining attorney cannot provide legal advice or statements about applicant's rights, the trademark examining attorney can provide applicant with additional explanation about the refusal(s) and/or requirement(s) in this Office action.  *See* TMEP §§705.02, 709.06.  Although the USPTO does not accept emails as responses to Office actions, emails can be used for informal communications and will be included in the application record.  *See* 37 C.F.R. §§2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05.


/AKhan/
Asmat Khan
Trademark Examining Attorney
Law Office 114
(571)-272-9453
asmat.khan@uspto.gov


**TO RESPOND TO THIS LETTER:**  Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp.  Please wait 48-72 hours from the issue/mailing date before using the Trademark Electronic Application System (TEAS), to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov.  For questions about the Office action itself, please contact the assigned trademark examining attorney.  **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:**  It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants).  If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:**  To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using the Trademark Status and Document Retrieval (TSDR) system at http://tsdr.uspto.gov/.  Please keep a copy of the TSDR status screen.  If the status shows no change for more than six months, contact the Trademark Assistance Center by e-mail at TrademarkAssistanceCenter@uspto.gov or call 1-800-786-9199.  For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:**  Use the TEAS form at http://www.uspto.gov/trademarks/teas/correspondence.jsp.

**Print: Jan 6, 2019**                    **87700317**

**DESIGN MARK**

**Serial Number**
87700317

**Status**
REGISTERED

**Word Mark**
KINGDOMWORKS STUDIOS

**Standard Character Mark**
Yes

**Registration Number**
5512487

**Date Registered**
2018/07/10

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
Jeremy Wiles INDIVIDUAL UNITED STATES 7000 SE Federal Hwy Ste 100
Stuart FLORIDA 34997

**Goods/Services**
Class Status -- ACTIVE.  IC 041.  US  100 101 107.  G & S: Book
publishing; Film studios; Film and video film production; Publishing
books in the field of education, religion and entertainment;
Publishing e-books in the field of education, religion and
entertainment; Media production services, namely, video and film
production; Motion picture film production; Multimedia entertainment
services in the nature of development, production and post-production
services in the fields of video and films.  First Use: 2010/01/01.
First Use In Commerce: 2012/01/01.

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "STUDIOS" APART FROM
THE MARK AS SHOWN.

**Filing Date**
2017/11/28

-1-

**Print: Jan 6, 2019**                    **87700317**

**Examining Attorney**
MCPHERSON-RAYBURN, SHA

**Attorney of Record**
Jenna L. Harris

# KingdomWorks Studios

https://www.renegadeproductions.com/services/post-production/          01/08/2019 04:24:50 PM



**Renegade**                    SERVICES        MEDIA        ABOUT        CONTACT        DIGITAL CONTENT STUDIO

# A great editor can make all the difference.

Our editors bring art, attention to detail and a wealth of experience to your project.  (Now here's some technical stuff)

Renegade is the only Mid-Atlantic commercial post production facility north of the DC beltway to offer a combined, collaborative workflow of SAN-connected Avid edit systems complemented by workstations running Adobe's Premium Creative Suites, Cinema 4D and ProTools.

Our workflow is tightly integrated with Avid's Interplay Asset Management System, Digital Rapids Transcoding/encoding engine, and Harris's QuiC Quality Control hardware.

**Brian Stetson**

My goal is to lure the viewer in with vibrant color, compelling visuals and dynamic sound.  In my world, each and every element should help to tell the story in detail.  I want the audience to walk away with more than just a product and a tagline.  I want them to walk away with a feeling.

Editors Reel

**Jason Bloom**

A respected director once told me that he appreciated my ability to find those 'little moments of magic when everything falls into place.'  A compelling narrative often hinges on subtle shades of

https://www.renegadeproductions.com/services/post-production/          01/08/2019 04:24:50 PM

performance.  My philosophy is to take a look at everything that was shot, not just the good takes, and
give it fair consideration. You never know where that perfect shot is hiding.



## Damon Edleblute

I truly enjoy the process of combining visual elements and sound together to create your story.
Wherever your vision may take you, I'll help navigate the path along the way. I love a challenge—no
matter the scope, format or final exhibition of the piece.



| Equipment | Capabilities |
|---|---|
| • 4 Avid Media Composer Nitris DX suites | • HD, SD, 2K, 4K, 6K, 8K |
| • Avid Interplay digital asset management | • All digital file formats |
| • Avid Unity 48Tb Fibre attached SAN | • DVCPro HD, DVCPro, Beta SP, 3/4" Tape, Mini DV, DV Cam. |
| • Digital Rapids Stream Z HD server | • Blu-ray, DVD authoring and robotic duplicator |
| • Harris QuiC Quality Control server | • Digital delivery through DG Fast Channel, CSpot, Spotlight, |
| • Durrough audio metering |   Cox Xpress, Spot Central. |
| • Brighteye 90A HD/SD/up/down/cross Converters | • Offsite client portal for review and approval |
| • Harris DL860 baseband legalizer | |
| • Custom render farm | |

©2019  Renegade Productions | 10950 gilroy road, suite j | hunt valley, md 21031 | 410-975-7906 phone | 410.667.1482 fax



https://www.renegadeproductions.com/services/audio/       01/08/2019 04:25:30 PM



**Renegade**  SERVICES   MEDIA   ABOUT   CONTACT   DIGITAL CONTENT STUDIO

**Hear the difference.**

**Audio Reel**

### Equipment

- Pro Tools 10 with high-end mastering and virtual instrument plug-ins
- Mac with two 3 Ghz 6-core Intel Xeon processors and 12 GB of RAM
- 003 Rack Digital Audio Interface with: 18 simultaneous channels of audio I/O, 24-bit/96 kHz resolution, 8 analog inputs, 8 analog outputs
- Whisper room dialogue booth
- Klein Hummel studio monitors

### Capabilities

- Mixing and mastering for video and music production
- Sound design for film and video
- Custom music scoring with virtual instruments
- ADR (Automated Dialogue Replacement)

©2019  Renegade Productions  |  10950 gilroy road, suite j  |  hunt valley, md 21031  |  410-975-7906 phone  |  410.667.1482 fax

http://www.lisbonworks.com/service/video-and-audio-production/          01/08/2019 04:38:50 PM



## VIDEO & AUDIO PRODUCTION
Video & Audio Production and Post-Production services

---

PRODUCTION AND POST-PRODUCTION SERVICES FOR CORPORATE AND
COMMERCIAL VIDEOS

We have the right creative team for TV and Radio Spots, Corporate or Web/Social Media
videos. Besides full production, we also offer post-production services that includes Video
Editing, Motion Graphics, Music Scoring and Color Correction.

YEARS OF EXPERIENCE IN AUDIO DUBBING, VOICEOVER AND MIXING FOR FILM,
TV, RADIO AND ONLINE.



**TV, RADIO AND ONLINE**

With a fully equipped audio post-production studio we can provide audio dubbing, editing and mixing for TV and Radio Spots, Documentaries, TV Series and Features. Other sound post-production services includes ADR, Foley, and Sound Design supported by acclaimed talent, state-of-the-art facilities and leading-edge technology.

I WANT MORE INFO

**EXPLORE OUR OTHER SERVICES**
WE HAVE A LOT MORE TO OFFER

© 2019 LisbonWorks. All Rights Reserved

https://www.maacindia.com/blog/index.php/big-six/          01/09/2019 12:10:57 PM



## Big Six

Published on December 22, 2014, by in Animation, Graphics, VFX

Hollywood has long been ruled by the studio system. The studio system includes a selected number of 'major' studios who engage in film production & distribution. They release a substantial number of films every year & earn a major share of box office revenues.

With significant changes marking the turning points in Hollywood, the frontrunners become the 'big' studios. The current 'Big Six' came into being from 1990 to 1995, when Hollywood became more of a conglomerate than a mere film production & distribution unit.

The 'Big Six' collectively command approximately 80 – 85 percent of US & Canadian box office revenue. These 'Big Six' are: **20th Century Fox, Warner Bros., Paramount Pictures, Columbia Pictures, Universal Pictures & Walt Disney Pictures.** Of these, 20th Century Fox, Warner Bros., and Paramount Pictures were part of the original 'Big Five' who operated during the Golden Age of Hollywood (late 1920s to mid-1940s). The other three –Columbia Pictures, Universal Pictures & Walt Disney Pictures earned the market share much later.

### Warner Bros. Pictures

Warner Bros. Pictures stands at the forefront of the entertainment industry. In 2013, Warner Bros. ruled the movie world with a market share of $5.03 billion globally". Some of the biggest releases of the studio this year include The Hobbit: The Desolation of Smaug, Gravity, and Man of Steel. They also set a new record as the only studio to exceed $1B for 13 years running". A few other titles that made Warner Bros. the # 1 name in the film industry include the Harry Potter series, the Superman series, The Matrix series & Star Wars.

Source: thehollywoodnews.com

### 20th Century Fox

20th Century Fox is the world's second largest film studio after Warner Bros. The studio has distributed various commercially successful films, including Avatar, Ice Age, X-Men, Die Hard, Planet of the Apes, Night at the Museum, and Fantastic Four, securing their their position as one of the Big Six studios of Hollywood. Though, some of these sites were shared on movie streaming sites. But still they managed to reach the $1 billion mark in gross domestic revenue in 2014#, and with enormous earnings by the end of the year, the studio's stunning turnaround easily surpass its previous records.

Source: www.projectcasting.com

### Paramount Pictures

Paramount Pictures is the longest operating major studio in Hollywood. It has a century of experience in finest production services from development of story idea to post production

---

Home   About MAAC   Courses   Authors   Website

Search

#### Student Enquiry Form

**GET A CALL FROM OUR COUNSELLORS!**

FILL THIS FORM NOW

Name *

Mobile No *

Email ID *

Select Course interested in

Select State

Select City/Centre

By clicking on Submit, I allow MAAC to call me and send program information on email/sms/phone

Submit

#### MAAC Courses

» 3D Animation Courses
» VFX Courses
» Graphic Design and Multimedia
» Gaming Design Course
» Media & Entertainment Courses
» Short-term Courses

MAAC Academy Blog

#### Become A Franchisee

Franchisee Enquiry Form

https://www.maacindia.com/blog/index.php/big-six/          01/09/2019 12:10:57 PM

development of story idea to post production.
In 2014, Paramount Pictures became the first
major Hollywood studio to distribute all its films
in digital-form only.



Source: faron.wikia.com

### Universal Pictures

Universal Pictures or Universal Studios is best
known for three of Steven Spielberg's biggest
hits – Jaws, E.T., and Jurassic Park, each of
which became the highest-grossing film ever at
the time of its release. The massive backlot of
the Universal Studios is used by other film
studios including Walt Disney. Parts of Pirates
of the Caribbean: Dead Man's Chest, and the
recreation of Whitecap Bay for Pirates of the
Caribbean: On Stranger Tides were both shot
at Universal Studios backlot



Source: technologytell.com

### Sony Pictures Entertainment (earlier known as Columbia-Tristar Pictures)

Sony Pictures Entertainment (SPE) operates
Columbia TriStar Motion Picture Group,
Screen Gems, Sony Pictures Classics, and
TriStar Pictures. The studio enjoyed its best
year in terms of box-office grosses in 2012,
with its films collecting US$ 4.4 billion in ticket
sales. SPE has produced, distributed, or co-
distributed successful film series including
Spider-Man, Men in Black, Underworld, and
Resident Evil.
Source: logos.wikia.com



Source: logos.wikia.com

### Walt Disney Studios

The Walt Disney Studio's multi-faceted film
division produced some groundbreaking films,
such as Snow White & the Seven Dwarfs, the
first full-length animated movie, and Pinocchio,
a film with intricate levels of technical brilliance
in animation, that made the studio stand apart.
Over the decades, Disney Studio introduced
numerous technologies in animation & live
action films. Disney's Steamboat Willie was the
first animated film to have synchronized sound
& image. Flowers and Trees was the first in the
genre with three-strip Technicolor, and
Fantasia was the first film to use a multi-
channel sound system called Fantasound.
Source: http://disney.wikia.com/



Source: http://disney.wikia.com/

These film studios dominate both American cinema & the global film industry. Most films that reach
the international audience, in multiple continents & in multiple languages, are usually produced and/
or distributed by one of these, thus making them the Big Six.

Tags: hollywood film industry , the big six studios , universal studios , warner bros. walt disney

**No Comments**

### Most Popular Posts

6 amazing career options that a Virtual Reality
course gives you

How is watching a movie on IMAX better than a
regular screen?

6 Pixar Animated Short Films That Won Our
Hearts

In-demand Jobs to prepare for in 2019

Top Animation Studios that Everyone Want to
be a Part Of

### Categories

Animation (66)
AR/VR (1)
Career Buzz (11)
Career Guidance (18)
Filmmaking (20)
Gaming (20)
Graphic Design and Multimedia (1)
Graphics (29)
VFX (42)

### Archives

July 2018
June 2018
May 2018
December 2016
November 2016
October 2016
September 2016
August 2016
July 2016
June 2016
April 2016
March 2016
February 2016
December 2015
November 2015
October 2015
August 2015
July 2015
June 2015
May 2015
April 2015
March 2015

https://www.maacindia.com/blog/index.php/big-six/          01/09/2019 12:10:57 PM



No Comments

« Top 14 VFX use in films of 2014

Exodus: Gods and Kings – VFX... »

## Leave a Reply

Your email address will not be published. Required fields are marked *

Name
*

Email
*

Website

eight +       = 17

Comment

You may use these HTML tags and attributes: <a href="" title=""> <abbr title=""> <acronym title=""> <b> <blockquote cite=""> <cite> <code> <del datetime=""> <em> <i> <q cite=""> <strike> <strong>

Post Comment

February 2015
December 2014
November 2014
October 2014
September 2014
August 2014
July 2014
June 2014
May 2014
November 2013
August 2013
June 2013
March 2013
January 2013
December 2012
November 2012
October 2012
September 2012
August 2012
July 2012
May 2012

Home › Animation › Big Six

**Quick Links**

About MAAC
Authors
Courses

**Recent Posts**

6 amazing career options that a
Virtual Reality course gives you
How is watching a movie on IMAX
better than a regular screen?
6 Pixar Animated Short Films That
Won Our Hearts
In-demand Jobs to prepare for in
2016
Top Animation Studios that
Everyone Want to be a Part Of

**Categories**

Animation (68)
AR/VR (1)
Career Buzz (11)
Career Guidance (18)
Filmmaking (20)
Gaming (20)
Graphic Design and Multimedia
(1)
Graphics (29)
VFX (42)

**@ MAACIndia.com**

Student Zone
Student Enquiry Form
MAAC Centres
Placements
MAAC Events
Hot n' Happening
Become A Franchisee

© Copyright 2016 Aptech Ltd. All rights reserved



OUR SERVICES

OUR SERVICES

SHORT FILMS          FEATURE FILMS          DOCUMENTARIES          WEB SERIES

Premiere Film is a production and distribution company that specializes in festival
distribution of films, short films, documentaries and web series.
Premiere has Its offices in Italy, France and USA.

We select the best films offering the following services: festival distribution / social media management / sales.

YOU CAN WATCH OUR SHORT FILMS ON

    

*THE AWARDS WON BY OUR CLIENTS*

  

https://premierefilm.it/          01/09/2019 01:53:52 PM







FOLLOW US

© 2018 PREM1ERE SRL                                              Privacy Policy

| | |
|---|---|
| **To:** | Kingdom Studios, LLC (dwtrademarks@dickinsonwright.com) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 87781778 - KINGDOM STUDIOS, LLC - 75584-5 |
| **Sent:** | 1/9/2019 1:58:37 PM |
| **Sent As:** | ECOM114@USPTO.GOV |
| **Attachments:** | |

## UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)

## IMPORTANT NOTICE REGARDING YOUR
## U.S. TRADEMARK APPLICATION

USPTO OFFICE ACTION (OFFICIAL LETTER) HAS ISSUED
ON **1/9/2019** FOR U.S. APPLICATION SERIAL NO. 87781778

Please follow the instructions below:

**(1)  TO READ THE LETTER:**  Click on this link or go to http://tsdr.uspto.gov, enter the U.S. application serial number, and click on "Documents."

The Office action may not be immediately viewable, to allow for necessary system updates of the application, but will be available within 24 hours of this e-mail notification.

**(2)  TIMELY RESPONSE IS REQUIRED:**  Please carefully review the Office action to determine (1) how to respond, and (2) the applicable response time period.  Your response deadline will be calculated from **1/9/2019** (*or sooner if specified in the Office action*).  A response transmitted through the Trademark Electronic Application System (TEAS) must be received before midnight **Eastern Time** of the last day of the response period.  For information regarding response time periods, see http://www.uspto.gov/trademarks/process/status/responsetime.jsp.

**Do NOT hit "Reply" to this e-mail notification, or otherwise e-mail your response** because the USPTO does NOT accept e-mails as responses to Office actions.  Instead, the USPTO recommends that you respond online using the TEAS response form located at http://www.uspto.gov/trademarks/teas/response_forms.jsp.

**(3)  QUESTIONS:**  For questions about the contents of the Office action itself, please contact the assigned trademark examining attorney.  For *technical* assistance in accessing or viewing the Office action in the Trademark Status and Document Retrieval (TSDR) system, please e-mail TSDR@uspto.gov.

## WARNING

**Failure to file the required response by the applicable response deadline will result in the ABANDONMENT of your application.**  For more information regarding abandonment, see http://www.uspto.gov/trademarks/basics/abandon.jsp**.**

**PRIVATE COMPANY SOLICITATIONS REGARDING YOUR APPLICATION:**  Private companies **not** associated with the USPTO are using information provided in trademark applications to mail or e-mail trademark-related solicitations.  These companies often use names that closely resemble the USPTO and their solicitations may look like an official government document.  Many solicitations require that you pay "fees."

Please carefully review all correspondence you receive regarding this application to make sure that you are responding to an official document from the USPTO rather than a private company solicitation.  All official USPTO correspondence will be mailed only from the "United States Patent and Trademark Office" in Alexandria, VA; or sent by e-mail from the domain "@uspto.gov."  For more information on how to handle private company solicitations, see http://www.uspto.gov/trademarks/solicitation_warnings.jsp.